THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LLOYD JONES, Plaintiff in Error.

*Opinion filed April 19, 1955—Rehearing denied September 19, 1955.*

IRVING M. WISEMAN, and EMERSON BOETZ, both of Alton, for plaintiff in error.

LATHAM CASTLE, Attorney General, and EDWARD R. PHELPS, State's Attorney, of Carlinville, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

Defendant, Lloyd Jones, brings this writ of error to review a judgment of the circuit court of Macoupin County entered on a jury verdict finding him guilty of the infamous crime against nature in the manner and form as charged in the indictment. He was sentenced to the Illinois State Penitentiary for a term of not less than four years nor more than eight years.

The issues presented by this appeal include: the propriety of denial of change of venue; the sufficiency of proof of venue; alleged errors committed by the trial court in its ruling on evidentiary questions, and finally whether the defendant was insane *ipso facto* because he was a homosexual.

The facts disclosed by the record establish that the defendant, Lloyd Jones, age 34, and his companion, John Chism, invited the complaining witnesses, Lewis Quirk, age 15, and Floyd Summers, age 16, to enter Jones's car, which he drove two and one-half miles south on highway No. 111 and about one fourth of a mile west on a side road after dark on the night of November 10, 1953, at Medora, Illinois, where the car was parked for about fifteen minutes, during which time the defendant and Quirk in the front seat, John Chism and Floyd Summers in the rear seat, performed homosexually. That these males displayed an abnormal attraction for each other in violation of section 47 of division I of the Criminal Code (Ill. Rev. Stat. 1953, chap. 38, par. 141,) there is no controversy.

Defendant filed two motions for a change of venue, one from the county and the other from two judges of the circuit, one of whom was the trial judge. The trial court denied the motion for a change of venue from the judges. His denial of the motions for change of venue, by reason of alleged prejudice of the inhabitants of the county, does not appear in the abstract except as reflected in the grounds

asserted in support of defendant's motion for a new trial. Neither the abstract nor the record discloses that any notice of these motions was ever given to the State's Attorney as required by law. Ill. Rev. Stat. 1953, chap. 146, par. 23.

Defendant's petition for change of venue from the judges states that he first discovered their alleged prejudice on June 2, 1954. The petition was filed on August 5, 1954, but no notice was given the State's Attorney until the arguments on the motion occurred when the case was called for trial on August 9, 1954. Under these circumstances the trial court did not err in denying the defendant's motion for a change of venue. *People ex rel. Romani v. Meyering,* 352 Ill. 436.

Much reliance is found in defendant's brief on the asserted error that the prosecution failed to prove that the alleged crime was committed in Macoupin County. This claim stems from the apparent uncertainty of the boys who were not sure whether the involved territory was in Macoupin County or Jersey County. They were well able to point out to the sheriff and their parents the place on the side road where the acts occurred. The father of the complaining witness and the sheriff testified that the place was one fourth to one third of a mile east of the Jersey County line and was in Macoupin County. It is here urged that their testimony was predicated upon hearsay and was therefore inadmissible. The boys were able to describe the locale of the criminal act and the witnesses knew that such place was within the county when the venue was laid. We are of the opinion therefore that this claimed error is without merit.

Groves B. Smith, a physician and surgeon, specializing in nervous and mental diseases, with admitted qualifications, testified that he gave the defendant a mental examination and found that he showed a feminine attitude toward not growing up; that his voice showed a background of personality deviations; that he was taken ad-

vantage of by a carnival man at age 14; that he has never been able to throw aside the continued interest to get sex stimulation through abnormal means and is now classified since age 14 as a homosexual, and is suffering from a compulsive neurosis, and that whenever he was with other homosexuals he was no longer able to use reason and form a judgment in breaking away from association with them so that in spite of himself he would be led into going out and taking part in homosexual behavior. He testified that the defendant knew any deviation from the acceptable standard was wrong, but by reason of this warping of his personality he was unable to accept and be guided by that knowledge; that he cannot control, by reason, his inability to choose between right and wrong, and that he is mentally ill and is not sane from an acceptable medical viewpoint. Upon cross-examination the doctor stated he did not accept homosexuality as a crime, but that the defendant should be looked upon as a weak person and not a criminal; and that he felt the defendant should be placed in an institution for the treatment of mental disease and not in a peniteniary. He further stated, "I believe Lloyd Jones to be not sane. I didn't say he was insane, I said he was not sane, which means medically, an individual shows deviation and from a legal standpoint he is insane; medically, he is not, he is suffering from a compulsive neurosis." On re-direct examination he stated, "He is not dangerous." The prosecution offered no evidence relating to the defendant's sanity.

Defendant's instruction No. 7 stated that if the jury found that the defendant at the time of the act was incapable of choosing to do or not to do the act, and incapable of governing his conduct in accordance with such choices, then they must find him insane and not guilty; and instruction No. 16 stated that if they found from the evidence in this case a creation of reasonable doubt because of insanity of the defendant, then they must acquit him.

The defense's expert testimony loses its probative value when we consider the viewpoint of the witness that the defendant has committed no crime by his act of perversion, and his contradictory statements that the defendant is not sane, but is not insane medically and that, "If a man is insane categorically the law says he must be insane academically, so we have alterations from black to white."

After carefully studying the record, we are of the opinion that the evidence presented by the defense does not raise a reasonable doubt as to defendant's sanity and is insufficient to overcome the presumption of his sanity. It was therefore unnecessary for the prosecution to prove the sanity of the accused. (*People* v. *DePompeis,* 410 Ill. 587.) The jury was properly instructed and the question of insanity is one for the jury. The defendant's rights were fully protected. Since the finding of guilty is not against the weight of the evidence or based on passion or prejudice, there is no reason why it should be disturbed. *People* v. *Thomas,* 409 Ill. 473, 478.

It may very well be that defendant's abnormal conduct is the product of a diseased mind, and that there should be some special treatment of this species of criminality. This, however, is a legislative problem. The State has pursued the only course available to remove from society the demoralizing influence of characters such as defendant.

Defendant has assigned other errors as to the giving of instructions on behalf of the People and denying defendant's motion for new trial or, in the alternative, in arrest of judgment, but has failed to argue them and they are therefore waived. *People* v. *Davis,* 412 Ill. 391.

On the basis of the foregoing analysis, it is our considered judgment that no prejudicial error intervened in the trial of this cause. Therefore, the judgment entered by the trial court on the verdict of the jury, which found defendant guilty as alleged in the indictment, is affirmed.

*Judgment affirmed.*