**John Stephan PARISIE,
Petitioner-Appellant,**

v.

**J. W. GREER, Warden Menard Correctional Center, Respondent-Appellee.**

**No. 80–1940.**

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1981.

Decided Feb. 18, 1982.

Jeffrey S. Bork, Chicago, Ill., for petitioner-appellant.

Suzan Sutherland, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before SWYGERT, Senior Circuit Judge, CUDAHY, Circuit Judge, and EAST,* Senior District Judge.

EAST, Senior District Judge:

THE APPEAL

The petitioner-appellant (Parisie) appeals the adverse summary judgment entered by the District Court on December 18, 1979 in his 28 U.S.C. § 2254 state prisoner habeas corpus proceedings. We note jurisdiction and reverse.

FACTS

Since the facts surrounding the tragedy of Jackson and Parisie are relatively unim-

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

portant to the appeal, we deem the following narration to be sufficient.

Jackson was seen leaving a scout meeting about 8:45 p. m. on Friday, April 12, 1968. About 10:45 p. m., a tow truck driver, on his way to pick up a car, found Jackson standing along a lonely country road outside the City of Springfield. Jackson said he had been shot, and he asked to be taken to a hospital. When Jackson was admitted to the hospital about 11:30 p. m., he had in his possession a money clip containing $210, a watch, and a masonic ring with a large stone which appeared to be a diamond. Jackson, after surgery, died the next morning.

On that same morning, at about 5:20 a. m., Parisie was found asleep in Jackson's car located in Springfield. Parisie had Jackson's driver's license and a gasoline credit card in his wallet, and Jackson's wallet was in Parisie's coat pocket. Jackson's wedding ring was found in a pocket of the decedent's sports jacket, which was folded on the back seat of the car.

PROCEEDINGS IN THE ILLINOIS STATE COURTS

A grand jury returned an indictment to the Circuit Court for Sangamon County, Illinois (trial court) charging Parisie with the murder of "Chet" Jackson.[1] A trial jury found Parisie guilty of the alleged crime on January 17, 1969. On February 27, 1969, the trial court sentenced Parisie to a prison term of forty to seventy years.

At this juncture, we note that prior to trial it was apparent to the trial court, the State, and friends of the deceased that Parisie in defense would claim that the deceased made homosexual advances toward him. At that time, a private attorney representing members of the decedent's family presented a motion *in limine* seeking to prevent Parisie from characterizing the deceased as a homosexual. During an in-chambers hearing on November 14, 1968, the private attorney stated:

> I represent the widow and three young children of the decedent. And the nature—I am informed and believe that the nature of the allegations will be devastating to the character and reputation of the decedent. They are untrue....

Although the trial court recognized that evidence of "homosexuality can be very important" and "would be admissible," it nevertheless entered an order prohibiting defense counsel from mentioning Jackson's homosexuality "in public or *in the trial*" (emphasis supplied).

During the first day of voir dire, the trial court asked some of the veniremen the following question:

> There may be some evidence in this case of homosexuality. If the evidence should show any person whose name comes up during the trial of this case was involved in acts of homosexuality, would that fact alone create prejudice or sympathy for that person?[2]

However, the trial court then reversed itself and announced that it would no longer ask such a question "until it is shown that the defendant will be prejudiced."

On the next day defense counsel moved for reconsideration of the ruling in light of the fact that there were three persons who could testify that they had had homosexual relations with Jackson, who knew his reputation in the community was that of a known homosexual and who had observed Jackson in known homosexual hangouts holding hands with other males. The motion was denied without comment.

None of the twelve jurors chosen were asked about their views on homosexuality.

---

1. The murder statute in effect at the time of petitioner's state court trial, Ill.Rev.Stat. ch. 38, § 9–1 (1967) provided:
   (a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
   (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

   (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
   (3) He is attempting or committing a forcible felony other than voluntary manslaughter.
   (b) Penalty....

2. One juror said: "You can't expect me to say this isn't going to make any difference to me if this man was a homosexual."

The Illinois Appellate Court affirmed the conviction on June 26, 1972, *People v. Parisie*, 5 Ill.App.3d 1009, 287 N.E.2d 310 (1972). Attempts to secure review by the Illinois Supreme Court and through post-conviction relief proceedings were denied.

Parisie has been incarcerated since his arrest on April 13, 1968 and is currently an inmate at Menard Correctional Center in Menard, Illinois.

PROCEEDINGS IN THE DISTRICT COURT

Parisie filed his pro se § 2254 habeas corpus proceedings in the District Court on April 3, 1979, together with supporting memoranda. On April 30, 1979, the State of Illinois, through its Attorney General, moved to dismiss the petition and cause and/or for summary judgment in its favor.

On December 13, 1979, the District Court, without holding an evidentiary hearing or reviewing the state court record, entered summary judgment against Parisie. On May 6, 1980, Parisie's motion for reconsideration was denied. An appropriate notice of appeal was filed on June 2, 1980, and on June 26, the District Court issued its certificate of probable cause for the appeal as required by 28 U.S.C. § 2253.

PRIOR PROCEEDINGS IN THIS COURT

On July 23, 1980, Parisie filed his pro se brief for appellant and petitioned for the appointment of appeal counsel. This court on August 18, 1980 denied the State of Illinois' motion for dismissal of the appeal for want of a timely notice of appeal, and on September 4, 1980 appointed legal counsel with leave to file supplemental briefing.

ISSUES ON REVIEW

Parisie presents the following issues:

1. Whether Parisie was deprived of an impartial jury:

(a) as a result of massive pretrial publicity; and

(b) when the trial court precluded him from questioning prospective jurors about bias or prejudice against homosexuality on the part of either the deceased or himself.

2. Whether Parisie was deprived of his Sixth Amendment right to present a defense when the trial court refused to allow three crucial defense witnesses to testify.

3. Whether the prosecutor's admittedly improper tactics violated Parisie's Fourteenth Amendment due process rights.

4. Whether Parisie was deprived of effective assistance of counsel.

5. Whether the cumulative effect of the errors rendered Parisie's murder trial fundamentally unfair and in violation of due process guaranteed by the Fourteenth Amendment.

DISCUSSION

*Issue 2*:

Since we consider issue 2 of primary importance and dispositive of his appeal, we meet it first.

The issue under this assignment of error was raised in the Illinois Appeals Court and in Parisie's memorandum of April 13 and July 2, 1979, filed in support of his habeas petition in the District Court. Through oversight or other reasons, the State did not address the District Court on the issue. Nor did the District Court deal with the issue in the opinion of December 18, 1979, supporting the summary judgment.

Under such circumstances, it would ordinarily be the better practice to remand the issue to the District Court for the first opportunity to decide the issue. However, we have the same record before us that would be before the District Court, and the parties have fully addressed us on the issue through the briefings. Furthermore, Parisie has been in custody for more than thirteen years and has been prosecuting these habeas proceedings since April 3, 1979. The appeal was inordinately delayed by extensions of time granted for the filing of the State's briefings. In light of these circumstances, we deem that judicial expediency and the furtherance of justice demand that we meet the issue and make a disposition now.

We believe the court at trial arbitrarily adhered to its prior rulings on the motion *in limine* and the voir dire restriction in rejecting the testimony of three defense witnesses then before the court.

**1014**

Parisie's offer of proof consisted of defense counsel's statement to the trial court that a witness would testify to having participated in three homosexual acts with the decedent and that the decedent was reputed in the community to be a homosexual. Also, defense counsel referred the trial court to an affidavit executed by another defense counsel and previously filed with the court and referred to at the hearings on the motion *in limine* and voir dire restrictions. This affidavit stated that two witnesses had seen the decedent in known male homosexual locations making homosexual manifestations.

The State does not dispute that the proffered testimony of the three witnesses was relevant, material and crucial to Parisie's defense. Rather, it attempts to justify the exclusionary ruling on the ground that the form of Parisie's offer of proof was defective; the state claims that defense counsel should have presented the testimony of the witnesses *in camera* rather than make the offer of proof himself. We believe that a prosecutor should not play cat and mouse with Sixth Amendment rights.

■ The same offer of proof had been made to the trial court on two prior occasions. On neither of those two occasions did the State's counsel challenge the offer on the grounds of form. It is manifest that State's counsel fully understood the nature of the testimony sought. But, if the State's counsel was not satisfied with the offer made through defense counsel's statement or wished further advice as to the witnesses' qualifications or to the substance of the proffered testimony, he should have asked, and was required to ask, for the testimony of the witnesses to be proffered *in camera*. Furthermore, the trial court well understood the importance of the testimony both at the time of its ruling on the motion *in limine,* and again when it denied defense counsel's motion for reconsideration of the ruling on the voir dire restriction. We assume the trial court still had that understanding when it excluded the witnesses' testimony. *See Schusler v. Fletcher,* 74 Ill. App.2d 249, 219 N.E.2d 588, 590 (1966).

■ For the reasons later stated, we respectively disagree with the conclusion of the appellate court of Illinois, Fourth District, 287 N.E.2d at 325, that "[t]he 'offer of proof' regarding all three of these witnesses is patently inadequate. They amount to nothing more than conclusionary, broad-sweeping statements of defense counsel and offer no acceptable foundation for admission as reputation evidence." The showing made simply does not warrant such a low assessment of probative value.

The proffered testimony of the three witnesses involved a great deal more than mere reputation evidence. The testimony involved actual homosexual acts and manifestations on the part of the decedent.

Sixth Amendment guarantees are very demanding in the protection of the right to a fair trial on murder charges. There is no indication in the record before us that the trial court ever made a definitive ruling that Parisie's counsel's offer of proof was insufficient. We are satisfied that the trial court and the State's counsel were well advised as to the content, competency, and relevancy of the proffered testimony of the three witnesses then standing before the court. The taking of their testimony *in camera* may well have been merely a rehearsal, supplying no additional insight to the trial court.

To face Parisie at the appellate level with the State's position that the offer of proof was technically insufficient raises an issue never urged at trial and never decided by the trial court. Rules on offers of proof are geared to the principle of preliminary advice to the trial court as to the relevancy of proffered evidence in order for the trial court to properly rule on admissibility, a safeguard against the admission of irrelevant and prejudicial evidence. At Parisie's trial, the trial court was well and fully advised as to the relevancy of the proffered evidence since the early stages of the trial. Refer to the trial court's ruling on the motion *in limine* and the trial court's voir dire ruling on the second day of trial above. The prejudice to Parisie from the restrictive voir dire ruling destroyed Parisie's defense predicated upon the testimony of the two expert witnesses. The late enforcement of

a technical defect in the offer of proof at the appellate level must be rejected as in conflict with Parisie's overriding due process rights under the Fourteenth Amendment. *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979).

In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court, in reversing a conviction when a defense witness was precluded from testifying, stated:

> The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. at 1923. *See also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.")

We are convinced in this case that the ruling excluding the proffered testimony was a carryover of the ill-advised orders on the motion *in limine* and the voir dire restriction. As such, the ruling was abusive and arbitrary. *Hughes v. Mathews*, 576 F.2d 1250, 1256 (7th Cir.), *cert. denied*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), *quoting Washington v. Texas*, 388 U.S. at 25, 87 S.Ct. at 1926 (Harlan, J., concurring).

Parisie's defense to the murder charge was that he did not have the requisite intent or mental capacity at the time of the incident because he was undergoing a "homosexual panic," a state of mind in which an individual acts instinctively or, in the words of the defense psychologist, becomes "insane for a period of time." The State is correct in asserting that the Supreme Court of Illinois has held that homosexuality "has in no way been equated in the law with insanity or incompetency." *People v. Jones*, 43 Ill.2d 113, 251 N.E.2d 195, 199 (1969); *People v. Jones*, 6 Ill.2d 252, 128 N.E.2d 739 (1955).

Such a holding of law, however, does not address a disturbed state of mind resulting from manifestations of homosexual orientation. The Illinois courts did not reach the issue of whether the psychotic state of mind caused by "homosexual panic" is a limitation or impairment of the requirement of mental capacity to commit a crime. Nor do we reach that issue here.[3]

Parisie testified in his own defense, stating that as he walked along a Springfield street at about 9:00 p. m. on April 12, 1968, Jackson pulled up next to him and offered him a lift. Parisie knew Jackson because they had once talked about sports cars at Jackson's automobile dealership, and accepted the offer of a ride.

Jackson soon stopped, purchased gasoline, paid cash from a large roll of bills, and after driving around the streets, he drove to a secluded gravel road and stopped in a driveway. He turned off the car lights, moved in the front seat toward Parisie, and put his hand on Parisie's crotch and said: "John, I'd like to blow you."

To a question by defense counsel, Parisie replied:

> Well, I was mad and he was smiling and he said, well if he couldn't I was going to walk; and that's where it ended right there. I remember struggling. I just kind of blew up, went crazy. I don't remember exactly or in anyway anything that happened after that, except we were struggling and I remember driving in circles in his car and—there just wasn't anything to it, nothing I can pinpoint or tell you direct.

---

**3.** The court in *State v. Thornton*, 532 S.W.2d 37, 44 (Mo.Ct.App.1975), described homosexual panic "as a violent emotional reaction to a homosexual situation stemming from a person's conscious, or subconscious, awareness of his own homosexual tendencies and a desire to conceal them at any cost. The result ... is conduct resulting in 'fright, flight or fight', and a loss of ability to distinguish between right and wrong and the suspension of premeditation or willful intent." *See also Commonwealth v. Shelley*, 374 Mass. 466, 373 N.E.2d 951 (1978).

A court-appointed clinical psychologist who examined Parisie found him to be a highly delusional paranoid schizophrenic who was a loner with a basic distrust of people and who suppressed his emotions causing periodical blow-ups. He found Parisie to be a highly latent homosexual with strong feelings of inferiority and testified that a severe stress of any type could result in an acute schizophrenic reaction with accompanying amnesia. During this schizophrenic reaction, "the individual comes apart and becomes insane for a period of time."

A court-appointed psychiatrist defined homosexual panic as a fear reaction precipitated by a psychological trauma such as a homosexual advance. In such circumstances, the person, because of his own repressed homosexual feelings, loses control and acts purely instinctively, "almost like an animal," causing the person to be unable to control the nature of his acts. This psychological state is followed by a "disassociative reaction of the personality" whereby the personality "literally disintegrates or becomes grossly disorganized." The most common manifestation of a disassociative act is amnesia brought on because the individual cannot consciously tolerate his feelings and the acts in which he engaged because of those feelings. Homosexual panic, the psychiatrist stated, is a mental defect and symptomatic of a mental disease.

The two critical elements of the defense experts' concept of the state of mind referred to as "homosexual panic" are: (1) Latent homosexuality on the part of the individual; and (2) A triggering act by another homosexual "such as a homosexual advance" or offer. While these defense expert witnesses supplied opinion evidence as to the existence of Parisie's latent homosexuality, the trial court's exclusionary ruling left the jury with the testimony of Parisie, an admitted latent homosexual, as the only evidence of homosexuality on the part of the deceased, a well known and respected citizen of the community, and of the second factor—a triggering act. The exclusion of the proffered testimony of the three witnesses deprived Parisie's defense of vital corroborative evidence, both as to

his credibility and the deceased's homosexuality. *See McMorris v. Israel*, 643 F.2d 458, 461–62 (7th Cir. 1981).

> Where credibility is as critical as in the instant case, the circumstances are such as to make the [excluded] evidence materially exculpatory within the meaning of the Constitution.

*Id.* at 462.

Of course, Parisie's credibility and the factual defense, under appropriate instructions as to the applicable law, are matters committed to the sole province of the jury. However, during their consideration of those matters, the defendant is entitled under the Sixth Amendment to have the entire defense picture before the jury and not just one-half of the picture, namely, Parisie's account of the deceased's homosexual advance.

> The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. at 19, 87 S.Ct. at 1923. *See also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense").

The trial court's ruling excluding the testimony of the three witnesses standing by was reversible error.

*Issue 1(a):*

In view of our ultimate reversal and granting of a new trial, this issue is moot on this appeal.

*Issue 1(b):*

In the event of a new trial, this opinion should be ample advice on the subject of the issue.

*Issue 3:*

In view of the probability of a new trial, we expect that the State will not again indulge in clearly or tenuously erroneous questioning with reference to the polygraph test, the decedent's widow and young children or display of the bloody mutilated clothes. *See People v. Parisie*, 5 Ill.App.3d 1009, 287 N.E.2d 310 (1972).

*Issue 4:*

In view of the order for a new trial, this issue is moot.

*Issue 5:*

We are convinced from our reading of the record before us that in the absence of reversible error under issue 2, the exclusion of the testimony of the three proffered witnesses, any one or perhaps two of the erroneous rulings under issue 1(b) (voir dire restriction) or issue 3 (prosecutor's improper tactics) could be considered harmless and not prejudicial to a fair trial; however, when those errors are considered cumulatively, the resulting aggregating effect was a steady and increasing destruction of a constitutional due process version of a fair trial.

We conclude for that reason alone Parisie would be entitled to a new trial.

The summary judgment entered by the District Court on December 18, 1979 is reversed and the cause is remanded to the District Court with instructions to issue its writ of habeas corpus as prayed for in Parisie's petition, or in such substance as the District Court shall determine, but to stay the execution of such writ on the condition that the State of Illinois grant Parisie a new trial on the charges resulting in his conviction and sentence within a reasonable time or such a definite time as fixed by the District Court, and diligently and without unreasonable delay prosecute the charges to

final conclusion. Otherwise, execution of the writ shall be forthwith had.

REVERSED AND REMANDED.

CUDAHY, Circuit Judge, dissenting in part:

The majority opinion is based fundamentally on premises which may well be quite valid. My objection is to the majority's disposition of the case without, I think, adequate exploration of these premises and their ramifications.

The majority concludes that the Illinois trial court deprived Parisie of his right to present competent and relevant testimony in his defense, and, therefore, deprived him of due process, by excluding the testimony of three witnesses concerning the alleged homosexual proclivities of the victim. Because the federal district court apparently failed to consider the issue of homosexuality at all and because the proffered testimony was apparently rejected by the Illinois trial court for procedural reasons, I would remand the case to the district court for further proceedings before now reaching the constitutional issue as the majority perceives it.[1] The majority concedes that remand would ordinarily be the better practice, but concludes that "judicial expediency" and the "furtherance of justice" suggest disposition without remand.

I.

The majority contends that "[t]he State does not dispute that the proffered testimony of the three witnesses was relevant, material and crucial to Parisie's defense. Rather, it attempts to justify the exclusionary ruling on the ground that the form of Parisie's offer of proof was defective...." *Ante*, at 1014. To the contrary, the State objected to Parisie's offer of proof presumably because the offer arguably failed to demonstrate the reliability (as well as the relevancy) of this evidence in establishing the victim's *reputation* as a homosexual.[2]

---

1. I limit my comments to the alleged due process violation since the majority finds this issue dispositive of this appeal.

2. The majority may be disputing this thesis, arguing that the proffered testimony "involved a great deal more than mere reputation evidence" because the witnesses allegedly would testify about "actual homosexual acts and

manifestations" attributed to the victim. *Ante*, at 1014. But I think under Illinois law evidence of prior homosexual acts may not be admitted to prove reputation. *See People v. Moretti*, 6 Ill.2d 494, 129 N.E.2d 709, 725–26 (1955), *cert. denied*, 356 U.S. 947, 78 S.Ct. 785, 2 L.Ed.2d 822 (1958). The defendant apparently did not articulate at trial or on this or prior appeals any basis other than reputation upon which the

Relevant evidence is evidence that tends to prove a fact or matter in controversy more or less probable as tested in the light of accepted assumptions about human behavior. *Marut v. Costello,* 34 Ill.2d 125, 214 N.E.2d 768 (1965). Illinois traditionally has accorded its courts broad discretion in determining the relevancy of evidence. *See Foss Park District v. First National Bank of Waukegan,* 125 Ill.App.2d 276, 260 N.E.2d 474 (1970), *cert. denied,* 402 U.S. 907, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971). In this case, the trial court apparently determined that the offer of proof did not establish the relevancy of the proffered evidence since, *inter alia,* the proffered evidence seemingly did not clearly relate to homosexual *reputation.*

Parisie's contention was also considered by the Illinois Appellate Court upon the direct appeal of his conviction. The Appellate Court determined, as a matter of state law, that Parisie's proffer failed to demonstrate the relevancy of the proffered evidence to the victim's homosexual reputation:

> The "offer of proof" regarding all three of these witnesses is patently inadequate. They amount to nothing more than conclusionary, broad-sweeping statements of defense counsel and offer no acceptable foundation for admission as reputation evidence. "This court, on numerous occasions, has held that reputation witnesses must be shown to have adequate knowledge of the person queried about and that evidence of reputation, to be admissible, must be based upon contact with the subject's neighbors and associates rather than upon the personal opinion of the witness." *People v. Moretti,* 6 Ill.2d 494, 129 N.E.2d 709, 725. Obviously, the form in which this offer of proof comes to us is insufficient to accommodate the well settled state of the law in this area.

state trial judge could have admitted evidence of prior acts by the victim. Rather than joining the majority in merely asserting that the proffered evidence "involved a great deal more than reputation evidence," I believe that we should remand to the district court for a determination of the purpose for which this evidence

*People v. Parisie,* 5 Ill.App.3d 1009, 287 N.E.2d 310, 325 (1972). The majority, however, would discard Illinois' purported application of its own law governing the procedure for admission of evidence because "[t]he showing made [by defendant] simply does not warrant such a low assessment of probative value," *ante,* at 1014, and the ruling excluding the evidence was "abusive and arbitrary." *Ante,* at 1015. Although I share the view of the majority that the alleged homosexuality of the victim was in all likelihood a material issue in the case, which the defendant may have been denied an opportunity to pursue, I think we should not so summarily override the state's procedural determination as to the relevancy and competency of evidence.

## II.

The appropriate analysis for determining the validity of a state procedural rule which, when applied, precludes the admission of evidence necessary for a defense is set out in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).[3] *See McMorris v. Israel,* 643 F.2d 458 (7th Cir. 1981). In *Chambers,* the defendant had called to the stand a witness who had admitted in an out-of-court confession that he, not the defendant, committed the murder. After the state elicited a repudiation of the confession on cross-examination, the trial court, by applying the state's rules on voucher (or "party witness") and hearsay evidence, refused to allow the defendant to question this witness adversely (or to call certain other witnesses). On appeal, the defendant alleged that the state's application of these evidentiary rules denied him his right of confrontation and precluded a fair trial. The Court did not, however, summarily conclude that the state's application of these rules violated the defendant's rights. The Court instead said that the

was proffered and the state law evidentiary rules governing its admission.

3. This analysis was most recently applied in *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979).

defendant's rights may "bow to accommodate other legitimate interests in the criminal process." 410 U.S. at 295, 93 S.Ct. at 1045. In applying this principle, the *Chambers* Court closely examined the competing interests underlying the state rules and the constitutional policies, and eventually concluded that "where constitutional rights directly affecting the ascertainment of guilt are implicated, [a state evidentiary rule] may not be applied mechanistically to defeat the ends of justice." 410 U.S. at 302, 93 S.Ct. at 1049.

In the instant case, the majority has not attempted to analyze whether the policies underlying Illinois' requirements (as to offers of proof of reputation) for appraising the relevancy of evidence are outweighed in this case by Parisie's Sixth Amendment right, through the evidence available, to present a defense of homosexual panic.

The majority merely notes that in *its* opinion, the proffered evidence was relevant to establish the victim's homosexuality.[4] This does not, however, seem to be the analysis mandated by *Chambers.*[5] Moreover, the majority reaches its conclusion notwithstanding that the district court, whether "through oversight or other reasons," failed entirely to address the homosexuality issue. *Ante,* at 1014.[6]

I believe the factual record before us is inadequate to assess the precise nature of the proffered testimony and the policies supporting the state's procedural rules governing offers of proof and the need for showing reputation. I would, therefore, remand this case to the district court for an expeditious but detailed review of the state court record and for an evidentiary hearing consistent with *Chambers* and with this court's recent opinion in *McMorris v. Israel,*

---

4. I note too that the trial court was aware that of the three witnesses Parisie wished to call to the stand, one would admit to having homosexual relations with the victim for pay, while the other two would testify to observing the victim evincing manifestations of homosexuality at various homosexual "hangouts."

5. The majority cites *Hughes v. Mathews,* 576 F.2d 1250 (7th Cir.), *cert. denied,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), apparently for the proposition that the state trial court's ruling was arbitrary and thus, constitutionally infirm. *Hughes,* however, is not on all fours with the instant case. In *Hughes,* this court invalidated a state rule excluding relevant and competent evidence because of its facial unconstitutionality. The instant case does not involve a challenge to facial constitutionality but instead raises the question whether the Illinois rule, *as applied* to the facts of this case, deprived Parisie of his constitutional rights by excluding this testimony. *See McMorris v. Israel,* 643 F.2d 458, 461 n.5 (7th Cir. 1981). The most appropriate analysis in the latter type of case is provided by *Chambers.*

The majority also relies on *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), a case similar to *Hughes.* In *Washington,* the Court invalidated a Texas statute as arbitrary and irrational on its face. That decision did not, as the language quoted by the majority might seem to imply, establish an unconditional right to present evidence without regard to state procedural rules.

6. The majority justifies its result in part by asserting that the technical deficiency of the

offer of proof was never raised during the trial. But this contention is misleading. The purpose of an offer of proof is to provide the court with sufficient information upon which to evaluate the relevancy and competency of evidence. *Ante,* at 1015–1016.

During the trial, the defendant called the three witnesses to testify about the victim's prior homosexual acts and manifestations, ostensibly to prove reputation. The state objected on grounds of relevancy to permitting the witnesses to testify, and the court sustained the state's objections. The defendant thereafter made the offers of proof which are at issue here. The defendant, however, never again renewed his request to the trial court to permit the witnesses to testify. But on appeal, in the Illinois Appellate Court, the defendant challenged the trial court's ruling excluding this evidence. I believe that the appellate court was entitled, as had been the trial court, to evaluate the offers of proof to determine their sufficiency to demonstrate the relevancy of the evidence. The trial court was not delinquent in apparently failing to decide the precise question of sufficiency of the offers of proof since this precise issue was not pressed before it. Nor was the state delinquent in failing to press this precise question. Moreover, the arguable relevancy of the proffered evidence may not have been obvious to the trial court, as the majority seems to assert. The trial court record, at least up to and at the time these offers of proof were made, reflects some confusion about the theory of "homosexual panic," upon which the defendant claims to rely; and it was not clear whether it was this theory or a more

643 F.2d 458 (7th Cir. 1981).[7] On remand I think Circuit Rule 18 should apply.

general claim of insanity, upon which the defendant relied.

7. The majority also notes that the trial court's ruling excluding defendant's evidence "was a carryover of the ill-advised orders on the motion *in limine* and the voir dire restriction." Although I also have difficulty understanding why the trial court restricted voir dire and am in doubt as to the propriety of the *in limine* motion, I find that again the district court and the majority have failed to consider these rulings under a *Chambers*-type analysis. Thus, on remand the district court should assess these

issues under Illinois law as well as under the Constitution to determine if the voir dire ruling and motion *in limine* deprived the defendant of due process.

One facet of the voir dire analysis *might* involve whether the defendant would have been prejudiced by inclusion on the jury of persons antagonistic to homosexuals (in light of the *victim's* alleged proclivities).