THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES MOORE, Defendant-Appellant.

(No. 60006; ▮▮▮▮▮▮▮▮▮

First District (3rd Division)—March 20, 1975.

338

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Michael J. Goggin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

. The defendant was indicted for the murder of Eliziah Triplett. After a trial by jury he was found guilty of voluntary manslaughter and sentenced to the State Penitentiary for a term of 4 to 12 years. Upon appeal defendant urges numerous contentions requiring either a reversal of the judgment, a new trial, or a reduction in sentence. We conclude that trial error requires a remand for new trial and that only two of the contentions need be considered; namely, that the trial court erred in extending the 120-day term provided for a speedy trial under (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c)); and that the trial court erred in excluding defense testimony concerning prior threats and attacks against defendant by the deceased.

Eliziah Triplett was shot and killed on April 20, 1972. Defendant was arrested later on the same date and charged with murder. After indictment the case was continued by agreement of the parties through February 21, 1973; thereafter, defendant demanded trial. On June 15, 1973, the State made an oral motion for a 60-day extension of the statutory 120-day period for trial because Michael Wilkerson, a State witness, could not be produced. Without an extension the statutory term, commonly called the fourth term, of defendant's custody while demanding speedy trial, would have expired on June 20, 1973. In support of the oral motion the State alleged the following. Michael Wilkerson appeared under subpoena at a hearing on May 31, 1973, but failed to comply with subpoenas requiring his presence on June 8, 1973, and June 11, 1973. A bench warrant had been issued for his arrest on June 11, 1973, which the police were unable to execute after several attempts, due to Wilkerson's erratic work schedule. However, his aunt, with whom he lived, was cooperating with the police which should result in his being taken into custody in the near future. Defendant responded to the State's motion by objecting to any extension as a violation of his constitutional rights. Defendant further stated, "I have been here five hundred days, he had plenty enough time," and, "He hasn't seen the guy." The trial court granted an extension to July 6, 1973, with the direction that if Wilkerson was located before that date the case should be advanced and reset. Subse-

quently, Wilkerson was taken into custody and the case proceeded to trial on July 5, 1973.

Defendant contends that the trial court erred in granting an extension of the statutory term, predicated upon two arguments. First, that the State introduced no evidence to establish that due diligence had been exercised to secure Wilkerson's presence at trial. Second, that in granting the extension 5 days prior to the expiration of the term, the trial court acted prematurely.

■■ Subsection (c) of the statute implementing the constitutional right to a speedy trial (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c)) provides:

> "If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later date the court may continue the cause on application of the State for not more than an additional 60 days."

A decision to grant an extension under this subsection is within the discretion of the trial court, and its determination will not be disturbed when there is no clear abuse of that discretion. (*People v. Arndt* (1972), 50 Ill.2d 390, 280 N.E.2d 230; *People v. Stephens* (1973), 13 Ill.App.3d 642, 301 N.E.2d 89.) *People v. Bey* (1973), 12 Ill.App.3d 256, 298 N.E.2d 184, held that unless a defendant challenges the truth of the allegations of fact offered by the State it is not an abuse of discretion for the trial court to rely upon those unsupported allegations of fact as constituting a sufficient showing of due diligence to obtain material evidence. It is only where the defendant does deny the truth of the alleged facts offered by the State that the latter must introduce some evidence thereon. In the instant case, the allegations of the State did reflect that due diligence had been exercised to secure Michael Wilkerson's testimony, and that in light of his aunt's cooperation with the police, a reasonable ground did exist to believe that his testimony would be secured at a later date. Defendant did not deny the truth of the allegations; instead, he made a general claim that the State had sufficient time to insure Wilkerson's presence at trial and objected that any extension would violate his constitutional rights. Being undenied, the trial court did not abuse its discretion in granting the extension in reliance upon the unsupported allegations.

Defendant's second argument that the trial court erred in granting the extension prematurely is without merit. Here the State's oral motion came 5 days prior to the expiration of the term. Defendant has cited no authority which requires that a motion for extension under subsection

(c) must be made only at a time immediately prior to the expiration of a defendant's term. Moreover, defendant's assertion that a determined effort by the police would have resulted in Wilkerson's being placed in custody prior to the expiration of his term, is mere speculation.

Defendant further contends that the trial court erred in excluding defense testimony concerning prior threats and attacks against defendant by the deceased. We agree. The evidence introduced by the State to support its theory of the charge reflects that at approximately 7:30 P.M., on April 20, 1972, defendant and a female companion [later identified as Dorothy Coleman] approached the intersection of 5th Avenue and Albany Street in Chicago. Deceased was standing on the corner with several other youths. Defendant called out that he had something to tell him. Deceased and defendant met in the street and walked north down the center of Albany Street. Defendant had his right arm around the shoulder of deceased and was seen to raise his left arm from his side. A shot was heard, and the deceased stumbled and fell near an alley leading from Albany Street. Defendant and Dorothy Coleman then ran from the scene in different directions. No weapons were seen or found on the body of the deceased nor on the ground where he fell. When defendant was arrested in his apartment later that evening an empty revolver was recovered which ballistics tests established as the weapon which had fired the fatal bullet.

The first defense witness was defendant's mother, Mary Moore. She testified that deceased did not have a good reputation in the community as a "peaceful and quiet citizen." The trial court sustained the State's objections to questions as to whether the witness knew of previous "run-ins" her son might have had with people in the community, and whether she knew the deceased was a member of the "Black Souls" street gang.

After a second defense witness was excluded from testifying because of discovery violations, Dorothy Coleman testified that on April 20, 1972, she and defendant found a revolver in defendant's backyard. He decided to take the weapon to his mother's home, and on the way the witness and defendant passed the intersection of 5th Avenue and Albany Street. There deceased and six companions called out to them to stop, then demanded either money from defendant or sex from the witness. When defendant refused, two of the youths grabbed her and the deceased pushed defendant against a wall. Deceased then began to take a shotgun out from under his coat, and at this point defendant shot him. The companions began to chase the witness and defendant, and she ran down an alley to Whipple Street where she was stopped by police.

Defendant testified in his own behalf that prior to April 20 he had seen the deceased on two occasions. When he attempted to expound

on what had occurred at those times, the following colloquies took place:

"Defense Counsel: Now tell us on what occasion before April 20, 1972, you had occasion to meet Eliziah Triplett.

Defendant: I met him once on Madison and Albany in the 3100 block. I talked with him and he told me that he had—

Asst. State's Attorney: Objection.

Trial Court: Sustained.

＊　＊　＊

Defense Counsel: Well, tell the Court and jury just what happened, what was said on that occasion.

Asst. State's Attorney: Objection.

Trial Court: Sustained, it's hearsay.

＊　＊　＊

Defense Counsel: And subsequent to the first occasion did you have another occasion to see Eliziah Triplett before April 20, 1972?

Defendant: Yes, sir, I did.

Defense Counsel: And approximately how long in terms of weeks or months or days was it?

Defendant: That was approximately three weeks before the incident happened.

Defense Counsel: Now do you recall at this time what happened at that three weeks before April 20, 1972, meeting?

Defendant: What happened on that occasion?

Defense Counsel: Yes, sir.

Defendant: He told me that I had to pay him money to stay in the neighborhood or join the gang, the Blackstone—

Asst. State's Attorney: Objection.

Trial Court: Objection sustained. Completely disregard it, it's hearsay."

On cross-examination defendant stated that on the two prior occasions the deceased did not have a gun when he attempted to extort money from him. He also admitted that he had seen the deceased a third time prior to April 20, 1972, and on that occasion the deceased made no extortion demands upon him.

██ In a homicide prosecution, in the absence of preliminary evidence of self-defense, neither the reputation of the deceased nor his previous conduct toward the defendant is admissible. (*People v. Allen* (1972); 50 Ill.2d 280, 278 N.E.2d 762.) Conversely, where defendant relies upon self-defense and there is preliminary evidence which, if believed by the jury, would justify a finding that the deceased was the aggressor, evidence of the deceased's violent character and prior threats and attacks

directed toward defendant are admissible. (*People v. Davis* (1963), 29 Ill.2d 127, 193 N.E.2d 841; *People v. Adams* (1962), 25 Ill.2d 568, 185 N.E.2d 676; *People v. Peeler* (1973), 12 Ill.App.3d 940, 299 N.E.2d 382.) The purpose of admitting such evidence is to establish the defendant's apparent danger, the circumstances confronting him, and the motives which influenced his actions. *People v. Johnson* (1969), 108 Ill.App.2d 150, 247 N.E.2d 10.

Defendant argues that the trial court erroneously restricted the testimony of Mary Moore and of defendant as to the character and past acts of the deceased. Mary Moore was the first witness called by the defense. Before that, no evidence had been introduced either by the State or the defense that the deceased had acted as the aggressor in the incident. In the absence of such preliminary evidence that defendant had acted in self-defense, the trial court did not err in sustaining the State's objections to questions as to the witness' knowledge of defendant's past altercations or gang activities of the deceased.

■■ The argument that the trial court erred in restricting defendant's testimony arises out of a different factual context. Dorothy Coleman preceded defendant on the witness stand. In her testimony she stated that she and defendant were accosted by the deceased and several of his companions; that the deceased made demands of money from defendant or sex from her; and that defendant shot the deceased only after the deceased pushed him against a wall and began to pull out a shotgun. This testimony constituted preliminary evidence which, if believed by the jury, would have justified a finding that defendant had acted in self-defense; and evidence as to prior threats and attacks made against defendant by the deceased would then have been admissible. However, defendant was prohibited from relating in his direct testimony the details of two conversations he had with the deceased prior to April 20, 1972. The result was to exclude an important factual foundation of defendant's claim that he shot the deceased in self-defense. Moreover, such prejudice was compounded during the defendant's cross-examination. The State then attempted to discredit defendant's testimony by inquiring into a third previous occasion when he had seen the deceased but where no extortion demands were made. In effect, defendant was subjected to attack on cross-examination upon a subject matter in which he himself had been barred from presenting on direct examination. The trial court erred in prohibiting defendant from testifying as to the two previous conversations he had with the deceased. Defendant was entitled to present this evidence, and we cannot say that the jury's determination would not have been affected if it had been admitted.

■■ The State responds that defendant waived any error by failing to

make an offer of proof concerning the content of his conversations with the deceased; and alternatively, that the error was harmless because equivalent evidence was brought out in the cross-examination of defendant. We reject both arguments. An offer of proof is not necessary where there is another satisfactory indication to the trial court, the opposing counsel, and the reviewing court of the substance of the excluded evidence. (*Schusler v. Fletcher* (1966), 74 Ill.App.2d 249, 219 N.E.2d 588.) Here the questions propounded to defendant on direct examination, as well as those portions of his answers which came prior to the State's objections, reflect that the content of defendant's previous conversations with the deceased was that which was sought to be admitted. The State's alternative argument that equivalent evidence was presented in defendant's cross-examination is without merit. It overlooks the fact that the State inquired into the subject matter of defendant's previous meetings with the deceased for the purpose of attempting to discredit defendant's direct testimony. This hardly qualifies defendant's cross-examination testimony as the quantitative or qualitative equivalent of that to which he should have been permitted to testify in detail on his direct examination.

We need not consider the remaining contentions of defendant, which are without merit or unlikely to recur upon a new trial. For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

McGLOON, P. J., and DEMPSEY, J., concur.