THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TREDDEST JACKSON (Impleaded), Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TYRONE WEATHERSBY (Impleaded), Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH C. WILLIAMS (Impleaded), Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDGAR SHORTER, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS HORNE (Impleaded), Defendant-Appellant.

Fourth District   Nos. 13343-13347 cons.

Opinion filed May 9, 1977.

MILLS, J., dissenting.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellants.

John G. Satter, Jr., State's Attorney, of Pontiac (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The defendants, who were inmates of the Pontiac Correctional Institution, were charged with beating a correctional officer after refusing to obey a work assignment order. The only occurrence witness was the officer. All five defendants denied having any part in the attack.

Each of the five defendants was convicted by a jury on two counts of aggravated battery and was sentenced to the penitentiary. The parties agree that only one judgment and sentence for each defendant may stand because the charges were based on the same conduct. Accordingly, the judgment and sentence imposed on the verdict of guilty on count II in the case of each defendant must be reversed.

Prior to trial, the court entered reciprocal discovery orders under Supreme Court Rules 412 and 413. (Ill. Rev. Stat. 1975, ch. 110A, pars. 412, 413.) After the State had rested, defense counsel attempted to call 14 witnesses, all fellow inmates of defendants. The names of these witnesses had not been previously disclosed to the State. There was no representation as to what these witnesses would testify and the trial court held that their testimony would be excluded. Paragraph (g)(i) of Supreme Court Rule 415 on which the exclusion was based, reads as follows:

"(i) If at any time during the course of the proceedings it is

brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." Ill. Rev. Stat. 1975, ch. 110A, par. 415(g)(i).

■■ In *Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208, the Supreme Court stated that the ultimate purpose of discovery devices is to increase the evidence available to all parties. Therefore, the object and purpose of sanctions for noncompliance with discovery rules or orders should be to compel discovery rather than to punish. See *People v. Endress* (1969), 106 Ill. App. 2d 217, 245 N.E.2d 26.

In *People v. Rayford* (1976), 43 Ill. App. 3d 283, 356 N.E.2d 1274, it was held to be reversible error to use too severe a sanction for noncompliance with a discovery order. In a recent case decided by a panel of this court in the Fifth District, the court discussed excessive sanction and the reasoning there appears to be applicable here. (*Department of Transportation v. Mainline Center, Inc.* (1976), 38 Ill. App. 3d 538, 347 N.E.2d 837.) While the rule vests the trial court with discretion to impose an appropriate sanction for noncompliance, an abuse of that discretion may constitute reversible error. (See *In re Estate of Fado* (1976), 43 Ill. App. 3d 759, 357 N.E.2d 195.) That is the case here.

The whole of defendants' position at trial was that they were not involved in the beating of the officer. The evidence shows that the victim was in charge of issuing work orders to inmates, including the defendants. He was executing disciplinary reports on these defendants for their failure to proceed to work as ordered when they asked him to check with his superiors before completing the reports. He did so and was told that the reports would be warranted. The defendants were informed of this and they began talking among themselves, clustering around the officer's desk. A coat was then thrown over the officer's head. He managed to throw this off but it was replaced. Thereafter, the officer was severely beaten. Defendant Weathersby testified that he had left the building prior to the assault. The other four defendants testified that they observed the beating from outside the office. While there was no offer of proof made, it is apparent that the 14 witnesses the defense sought to call were needed to establish or corroborate the alibis given by defendants during their testimony.

■■■ The State is presumed to have had knowledge of the witnesses the defendants attempted to call. The witnesses were all fellow inmates of the defendants, witnesses who were more clearly within the State's control than the defendants. They were witnesses whose identities should

have been disclosed in response to the defendants' discovery motion.

The court could, perhaps more equitably, have solved its dilemma by ordering a short recess during which the State could have interviewed the inmate witnesses to see what, if anything, they had to say about the case. Another remedy could have been for the court to order an *in camera* proceeding to assure that proper discovery had taken place, thereby enhancing the possibility of a fair trial. It is preferred that the spirit and formalities of our discovery law be met in the instant case, rather than only the formalities. It must be realized that discovery is not an end in itself. It is a supportive procedure designed to simplify issues and in a general way to lead to the ascertainment of truth. The imposition of harsh sanctions, such as was done here, is a last resort measure and ordinarily does not contribute to the goal of truth seeking. We hold that the sanction chosen by the trial judge here was too severe and produced a degree of unfairness that constitutes reversible error. Since we are remanding this case for a new trial, it is necessary that we address certain of the other issues raised by defendants.

■■ Defendants argue that photographs of the injuries sustained by the officer were inflammatory and their introduction was error. Defendants offered to stipulate that the victim had received great bodily injury. The State may stipulate to such a fact but they are under no compulsion to do so. Here they did not. If photographs are relevant and material, they are admissible, regardless of their gruesome nature. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd in part*, 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 227.) While we recognize the inflammatory nature of the photographs here, they are relevant and material and it was not error for the State's Attorney to refuse to stipulate to the facts the photographs would prove and rely on those photographs themselves instead.

We find no merit to the defendants' remaining two contentions. Because the record reflects that defense counsel was possessed of a transcript of the suppression hearing held in this case, the question of whether the denial of such a transcript is reversible error is moot. The trial of defendants here was not a farce and we are able to find no evidence of incompetency on the part of the defendants' trial counsel.

The judgments appealed from are reversed and this cause is remanded for a new trial.

Reversed and remanded.

REARDON, J., concurs.

Mr. JUSTICE MILLS, dissenting:

I put it to you. Is it not a *non sequitur* to say that the purpose of sanctions for noncompliance of discovery rules or orders should be to compel discovery rather than to punish? If it is not a *non sequitur*, then at the very least the statement is internally contradictory in my opinion, because "sanction" and "punish" are synonyms. It is hard for me to comprehend how we can have sanctions that do not punish or how punishment can be used to compel discovery in this context. How can a court compel compliance when it's too late? How can you compel compliance of disclosures prior to trial when you are in midtrial? I suggest that the drafters of Rule 415(g) must have had this in mind in authorizing a court "to exclude such evidence."

Here, we don't even know *what* the court excluded. I do not understand the statement that though no offer of proof was made, "it is apparent that the 14 witnesses the defendant sought to call were needed to establish or corroborate the alibis given by defendants during their testimony." It may be a reasonable surmise, but, to my view, it is not "apparent." Nor do I see why the State is presumed to have knowledge of the witnesses the defendants attempted to call simply because they were inmates in the penitentiary, nor how the State could have disclosed them "in response to defendants' discovery motion," unless we accept the premise that all inmates at Pontiac knew something about the case. Even here, the State is only under an obligation under paragraph (c) of this rule to disclose material within its possession which tends to negate the guilt of the accused, which is a far cry from saying that the inmate population at Pontiac might have known something about the case.

It's not incumbent upon the court or the State's Attorney to seek an offer of proof from or by a defendant—it's up to the defendant to make the offer. And if he doesn't do so, I think a court can conclude or infer that either (a) the witness wouldn't testify to anything relevant, or (b) that defendant or his counsel doesn't know what they were going to testify to. Practically the same thing. The court here didn't know what these witnesses were going to testify to and I think it is reasonable to conclude (since the contrary isn't shown) that no purpose would be served by their testimony. So the sanction of exclusion isn't very severe at all. Ordinarily when one side or the other offers a witness, he knows very well what he's going to testify to. But if the relevancy of the witness' testimony is questioned in advance, it's no great burden to make an offer of proof or otherwise represent what the testimony would be. If the offering side doesn't choose to do so, I don't see how they can complain if the witness, hence his testimony, are excluded.

It seems to me that the majority opinion misinterprets the impact of

*Wardius.* There it was held that an alibi witness may be excluded because of defendant's failure to give notice of an alibi defense, if the defendant " '\* \* \*' enjoys reciprocal discovery against the State.' [*Williams v. Florida* (1970), 399 U.S. 78, 82 N. 11, 26 L. Ed. 2d 446, 450 N. 11, 90 S. Ct. 1893.]" (412 U.S. 470, 471, 37 L. Ed. 2d 82, 85, 93 S. Ct. 2208, 2210.) Rule 413 is clearly a two-way street and accords such mandated fairness.

My colleagues suggest a continuance would have been a more efficacious sanction—if such can really be called a sanction. Obviously, some contexts clearly call for a continuance. Perhaps where witnesses are limited as to both number and importance, or where even with the large number proffered here, if such proffer came *prior* to trial. But our situation is vastly different—the trial was under way, the State had finished, and suddenly the prosecution is confronted with 14 witnesses they knew not of. To halt the trial to give the State an opportunity to interview, or attempt to interview, such a very large number is unreasonable. Trials must go on, not halted in midcourse for the kind of activity which is more properly a part of preparing for trial. And—again—what is more, we know not *what* the witnesses would have testified to. Certainly it is not unreasonable to expect, at the very least, that there would be some tender as to the relevancy and materiality of the testimony sought to be elicited.

A further statement leaves me befuddled. The majority opinion states that, "Another remedy could have been for the court to order an *in camera* proceeding to assure that proper discovery had taken place, thereby enhancing the possibility of a fair trial." The only *in camera* hearing provided for under the Rules is in Rule 415(f) which states that upon the request of any person the court may permit any showing of cause for ·*denial* of disclosure to be made *in camera.* As I read this paragraph, *in camera* hearings are only for the purpose of denying disclosure—not for the purpose of furthering disclosure.

I am not unmindful that the exclusion of evidence is a far-reaching and onerous sanction. I would even say that it should be avoided when such avoidance can obviate or alleviate to some meaningful extent the harm done, or it indeed promotes or "compels" discovery. But as I have said, we really don't know *what* evidence was excluded. Maybe absolutely nothing. If the sanction of exclusion was here improperly imposed, under what circumstances will it ever be proper? I can think of none. I dissent.