UNITED STATES of America ex rel. Johnny VEAL, Petitioner-Appellant,

v.

Richard DeROBERTIS, Respondent-Appellant.

No. 81–2984.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1982.

Decided Nov. 17, 1982.

---

Daniel M. Harris, Asst. Atty. Gen., Chicago, Ill., for petitioner-appellant.

Sam Adam, Chicago, Ill., for respondent-appellant.

Before CUDAHY, COFFEY, Circuit Judges, and GRANT,* Senior District Judge.

GRANT, Senior District Judge.

This is an appeal from the district court's granting of petitioner Johnny Veal's request for habeas corpus relief. *United States ex rel. Veal v. Wolff,* 529 F.Supp. 713 (N.D.Ill.1981). While his original petition raised several separate grounds for relief, the district court addressed and relied on only one. It concluded that Veal's constitutional rights were violated when the state trial court refused to allow Veal to present alibi witnesses because of his refusal to disclose the names of those witnesses prior to presenting his case-in-chief.

## Background

Veal and another individual were tried and convicted during the summer of 1971 for the murders of two police officers and

sentenced to concurrent imprisonment terms of not less than one hundred years nor more than one hundred ninety-nine years for each murder. The Illinois Appellate Court affirmed his conviction, *People v. Veal,* 58 Ill.App.3d 938, 16 Ill.Dec. 188, 374 N.E.2d 963 (1978), and the Illinois Supreme Court denied leave to appeal. Veal then filed a petition for a *writ of certiorari* with the United States Supreme Court which was also denied. *Veal v. Illinois,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979). In January, 1980, Veal proceeded to file with the federal district court a petition for a *writ of habeas corpus* pursuant to 28 U.S.C. § 2254(a). As earlier stated, Veal asserted in his petition several constitutional violations. Finding that relief was warranted on one claim, the district court declined to examine the others.

That one claim concerns the events which transpired after the State completed its case-in-chief. The facts are not disputed and we will simply rely upon the statement of facts contained in the Illinois Appellate Court's opinion.

> Several months before trial, the State filed a motion for discovery, which included a demand for notice of alibi defense and the names and addresses of witnesses thereto. Defendant Veal did not respond to this demand before trial; nor did he respond at the commencement of trial. However, after the State rested its case-in-chief and after the court had denied a motion for a directed verdict of acquittal, Veal's attorney asked the court to rule on whether Veal would be permitted to call alibi witnesses without first disclosing to the State the witnesses' names and addresses. He stated that four witnesses were prepared to testify that Johnny Veal was at a place other than the place from which the shots were fired, but that these witnesses had told him they would not testify if their names and addresses were revealed before they took the witness stand, because they feared the police

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

would abuse them. Counsel cited both a sixth amendment right to call witnesses and *Williams v. Florida* (1969), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, for that court's ruling that alibi discovery statutes are permissible if the defendant enjoys reciprocal discovery of the State's alibi rebuttal witnesses.

The State objected that the motion was not timely made and questioned whether the alibi witnesses in fact existed. Defense counsel asserted again that they existed, but made no offer to reveal them to the court, in camera or otherwise. Defendant Veal's counsel said:

"We are saying that we have witnesses. We want to call the witnesses and will not tell the State who the witnesses are. The question now is will your Honor let them testify or not testify. It's just that simple your Honor. Rule and we'll go on to something else."

16 Ill.Dec. at 215–16, 374 N.E.2d at 990–91. In response the court stated:

"... The court stated previously to defense counsel, I am going to treat the defense the same as it did the State. When the State offered a policeman there who wasn't on the list, I said he could not testify, and at that time, I asked * * * [defense counsel], I stated on the record, gentlemen, I am going to treat the defense the same way as I am treating the prosecution. I want to be fair to both. If you have alibi witnesses, submit those names. To date, they were not given. This is the proper time to give a list of witnesses."

Veal's counsel then said:

"I'll not give them until the witness takes the stand."

and the court stated:

"Then the court will not permit them to testify, and that's the order of court."

Thereafter, defendant Veal did not call any alibi witnesses to testify. His counsel argued that it would be prejudicial to him to call the witness, have the State object and then have the witness excluded by the court for failure to comply with the alibi discovery motion.

*Id.*

At the time of Veal's trial, the Illinois Code of Criminal Procedure contained the following notice-of-alibi statute:

Upon the request of the prosecuting attorney, filed and served upon a defendant not less than 10 days before the trial of such cause, whenever a defendant charged with an offense prohibited by Articles 8 through 33, inclusive, of the "Criminal Code of 1961" proposes to offer in his defense, testimony of witness other than himself to establish an alibi, such defendants shall, not less than 5 days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to assert such alibi, which notice shall include specific information as to the place where the accused maintains he was at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call to establish such alibi defense.

\* \* \* \* \* \*

The defendant shall not be permitted to introduce evidence inconsistent with such notice unless the defendant establishes to the satisfaction of the court that witnesses to be called and not named in the notice were not known at the time such notice was filed or the court for other good cause permits the notice be amended. In the event of the failure of a defendant to file written notice as required in this Section, the court may exclude evidence offered by the defendant for the purpose of proving an alibi, if it appears to the court that such evidence takes the State by surprise.

Ill.Rev.Stat. ch. 38, § 114–14 (1969). A separate section of the Code denied to the defendant the right to discover the names and addresses of the State's rebuttal witnesses. Ill.Rev.Stat. ch. 38, § 114–9(c) (1969). While shortly before Veal's trial this statutory scheme was held to be constitutional by the Illinois Supreme Court in

*People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634 (1970), it was later held to be unconstitutional following the United States Supreme Court's decision in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). *People v. Fields,* 59 Ill.2d 516, 322 N.E.2d 33 (1974), *cert. denied,* 423 U.S. 843, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975). The fatal aspect of the statute was its failure to provide for adequate reciprocal discovery rights. Both the Illinois Appellate Court and this court have held that *Wardius* is to be applied retroactively. *See People v. Stinson,* 37 Ill.App.3d 229, 345 N.E.2d 751 (1976); *People v. Lucien,* 34 Ill.App.3d 161, 340 N.E.2d 65 (1975); *United States ex rel. Hairston v. Warden,* 597 F.2d 604, 609 (7th Cir.), *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979).

### State Appellate Proceedings

On appeal to the Illinois Appellate Court, Veal argued that the trial court erred in excluding his alibi witnesses for failing to name them. The Appellate Court, nearly seven years after the trial, rejected this argument on the ground that Veal had not been prejudiced by the trial court's action. 16 Ill.Dec. at 216, 374 N.E.2d at 991. It relied on two reasons. First, the trial court had not applied the alibi statute and Veal was thus not suffering the prejudices associated with it.

[B]y revealing the witnesses only just before their testimony, defendant Veal would have effectively achieved the surprise specifically denied to the defendant in *Williams v. Florida* and the effect of fear of police harassment of the witnesses before they could testify was eliminated. Had the witnesses been permitted to testify following disregard of the alibi notice rule, their names and addresses would have been revealed no later than the State's cross-examination of the first alibi witness, for the prosecutor no doubt would have inquired of that first witness who else was present besides the defendant and the witness at the place other than the scene of the crime at the time the crime was committed. [cite omitted]. Indeed, this may have been revealed during the direct examination. Therefore, the use to which the State could have put the information sought to be discovered was effectively canceled by the court permitting the disclosure to be made as late as the moment before the first alibi witness was to be called.

*Id.* 16 Ill.Dec. at 217, 374 N.E.2d at 992. Second, Veal failed to make an adequate offer of proof.

[W]e are greatly troubled by the lack of any real offer of proof concerning these alibi witnesses. Defendant Veal was represented at trial by a very able and experienced member of the criminal trial bar. Yet his only offer on this issue was that he had four witnesses who would testify that defendant Veal was elsewhere than the scene of the crime. We cannot speculate about where these witnesses would have placed defendant Veal or even that they all would have placed him in the same place. Without any offer of proof we have no way of knowing the materiality of the evidence sought to be proved through these witnesses.

*Id.* The court then went on to state that as a result, it was "left in doubt" as to the existence of these witnesses. Other avenues were noted by the court by which Veal could have revealed the witnesses to the trial judge and still protected them, but he elected not to take advantage of any. The court concluded that "without an offer of proof, a finding of prejudice to defendant Veal because of the court's order would be pure speculation." *Id.*

### District Court Proceedings

The district court below held that Veal's fourteenth amendment due process rights and his sixth amendment right to compulsory process of witnesses were violated by the trial court's actions. With respect to Veal's fourteenth amendment claim, the district court concluded that whether the trial judge was applying the statute itself or some modified version of it, Veal's constitutional rights were still violated because of the absence of a reciprocal right in Veal to

learn the identity of the State's rebuttal witnesses. The district court reasoned:

If the trial judge was applying the Illinois notice-of-alibi statute to exclude Veal's alibi witnesses, the *Wardius* decision is directly applicable and the conviction cannot stand. If the trial judge was applying an alibi rule of his own creation, the principles enunciated in *Wardius* are still applicable. The fundamental unfairness which the Supreme Court found to exist when Oregon's non-reciprocal notice-of-alibi statute was applied is surely as present when a non-reciprocal judicially-created rule is applied as when the rule is embodied in a state statute. The end result is the same: the defendant is precluded from presenting his alibi evidence because of his failure to comply with a fundamentally unfair procedural rule. As the Court explained in *Wardius,* it is not enough that the trial judge might have decided that petitioner was entitled to reciprocal discovery in the instant case. The State does not contend that the trial judge would have ordered it to provide such reciprocal discovery to the defense. Moreover, given the explicit statutory exception of rebuttal witnesses from discovery at that time, Ill.Rev.Stat. ch. 38 § 114–9(c) (1969), such a possibility appears highly unlikely.

529 F.Supp. at 719. With respect to Veal's sixth amendment claim, the district court held, relying upon *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) and *United States v. Davis,* 639 F.2d 239 (5th Cir. 1981), that "Veal's sixth amendment right to call witnesses on his own behalf should [not] bow to the state's procedural interest in preventing surprise in the case at bar." 529 F.Supp. at 721. In this regard, the district court reasoned:

In the instant cause, the discovery rules involved are designed primarily to prevent surprise, rather than to protect the integrity or trustworthiness of the evidence presented at trial. The testimony of an alibi witness will be rendered neither more nor less trustworthy by the mere revelation of his name to the state. The states' interests in the evidentiary rules at issue in *Chambers* and *Washington* were surely more significant than the purely procedural interest of preventing surprise involved here in the exclusion of unlisted alibi witnesses. Since the purpose of a notice-of-alibi rule is to give the state time to prepare its rebuttal, an adequate alternative to the wholesale preclusion of unlisted alibi witnesses might be a short recess granted to the state. The court could also consider the use of its contempt power against an attorney or defendant whose conduct it felt to be deliberately obstructionist.

\* \* \* \* \* \*

We hold, therefore, that exclusion of a defendant's alibi witnesses as a sanction for noncompliance with a notice-of-alibi rule violates a defendant's sixth amendment right to compulsory process.

*Id.* at 722–23 (footnote omitted).

In this appeal, the State asserts three arguments in support of reversal. First, the trial court's action was not a constitutional violation. Second, Veal's failure to make an adequate offer of proof bars an award of habeas relief absent a showing of cause and prejudice under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Third, an evidentiary hearing is required to resolve genuine issues of material fact going to the question of harmless error, *i.e.,* whether the alibi witnesses really existed. If there were none, the error is harmless beyond a reasonable doubt.

## Constitutionality of Trial Court's Action

The State's argument here is that the trial court did not apply the admitted unconstitutional notice-of-alibi statute. Instead, it applied a distinct and independent procedure under which the prosecution and Veal were placed on an equal footing in that both sides were forced to put on their cases-in-chief without knowledge of the other side's response. It claims this is the primary evil condemned in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d

82 (1973), and thus, since not present here, renders the trial court's actions proper.

■ We fully agree that in a technical sense what the trial court did was not to apply and enforce the invalid alibi statute. That statute was limited to pretrial disclosures. Nevertheless, it is obvious that the court's order was based upon the scheme outlined in the statute. Moreover, the State's arguments at trial protesting Veal's attempted introduction of alibi testimony were based upon noncompliance with the statute. Thus, even the State itself considered the trial court's action to be founded upon the alibi statute. Veal was being forced to disclose the names of his alibi witnesses but, rather than before trial, he was now being required to supply the relevant information before presenting his case-in-chief. This modified version of the statute also fails to satisfy the *Wardius* standard. Reciprocity is not present, *i.e.,* the State was not required to disclose to Veal upon request its rebuttal witnesses. *Wardius* makes clear that any procedure denying reciprocal discovery rights such as the one employed by the trial court, whether expressly pursuant to a statute or judicially created, fails to satisfy the due process requirement of the fourteenth amendment.

The State weakly suggests that reciprocity was present in the trial court's order and the State would have been required to disclose to Veal its rebuttal witnesses. Such a suggestion may in fact be true and the trial court might have imposed a reciprocal obligation on the State. But as the district court correctly found, "[t]here is no evidence in the record to indicate" that reciprocity would have been imposed. 529 F.Supp. at 719 n. 12. The State's argument amounts to nothing more than speculation. The trial court was essentially enforcing the alibi statute, albeit a modified version, and there is no reason to believe that the trial court would not have enforced the non-reciprocity provision as well. Veal could not be placed in a position of guessing whether the trial court would require disclosure by the State of its rebuttal witnesses. And that is the exact position in which he was placed.

For these reasons, we agree with the court below that the trial court's order violated the mandate of *Wardius.* Inasmuch as the trial court's order was unconstitutional, we need not reach the issue whether it is constitutional for a trial court to exclude the testimony of defense witnesses other than the defendant for noncompliance with an otherwise valid alibi-notice statute. *See Alicea v. Gagnon,* 675 F.2d 913, 917 n. 6 (7th Cir.1982). The order itself was invalid and, therefore, the sanction applied was also invalid. Nor do we need to reach the sixth amendment question left undecided by *Williams v. Florida,* 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 1897 n. 14, 26 L.Ed.2d 446 (1970) and *Wardius,* 412 U.S. at 472 n. 4, 93 S.Ct. at 2211 n. 4, argued by Veal and decided by the district court. *Wardius* controls the disposition of this matter.

### Preservation of Constitutional Error

The State contends that Veal failed to make an adequate offer of proof at trial which precludes him from raising as error the exclusion of alibi witnesses absent a showing of cause and prejudice under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Veal asserts three arguments in response. First, an offer of proof was made which was entirely adequate. Second, Illinois law at the time of Veal's trial did not require that an offer of proof be made. Third, *Sykes* is limited to a defendant's noncompliance with a state procedural contemporaneous objection rule and does not also encompass noncompliance with a state procedural offer of proof rule.

Examining first the adequacy of the offer of proof, we agree with the State that Veal's offer fell far short of what is required. The statement which Veal contends constitutes his offer of proof is the following statement of counsel:

I want to say there are four witnesses that Johnny Veal has and I have talked to one as recently as last evening, all of which have given me statements, all of which have given me signed statements, which witnesses, Judge, will testify that

Johnny Veal was at a place other than the scene of the crime as stated by the prosecution's evidence, at a place other than the place from which they say the shots were fired ... So what we are asking your Honor do in this case is that your Honor allow me to proceed with the rebuttal in due course, I mean with the alibi evidence in due course.

This statement provides absolutely no information to the court. Even the place and time are not included, even though such information is vital to an adequate offer and could have been easily supplied without jeopardizing the safety of the witnesses themselves. All the statement in effect says is "I have an alibi." It amounts to nothing more than a self-serving, overly broad and completely unsubstantiated conclusion.

Offers of proof serve two important functions which were explained by Judge Weinstein in this manner:

> Compliance with the rule enables a trial judge to determine whether the evidence would be available for any purpose, and ensures that the record will be sufficiently detailed to permit appraisal by an appellate court of the scope and effect of the ruling, so that it can determine whether the trial court committed reversible error in excluding the evidence.

Weinstein's Evidence ¶ 103[03] at 103–27 (1977) (footnote omitted). In this case, all that trial counsel established was the general subject matter of the evidence. What was required was an indication of the substance of the evidence. *See United States v. Winkle,* 587 F.2d 705, 710 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62

L.Ed.2d 34 (1979). At trial the State strongly challenged the very existence of these witnesses and Veal was fully aware of it. The offer needed to be structured so as to resolve the doubt surrounding this particular charge. In light of this fact, we are left without the ability to determine, in the words of Judge Weinstein, "the scope and effect" of the trial court's action. There is no question that the State never formally challenged the adequacy of the offer nor did it suggest alternate means of supplying more detailed information while still protecting the identity of the witnesses. But the burden was upon Veal to make an adequate offer. He cannot be heard to argue that an otherwise inadequate offer is made valid because of the State's failure to challenge its adequacy. This reasoning is circular and ignores the fact that it is up to the party challenging exclusion to formulate an offer which satisfies all needs. One of the needs in this case was some indication that the witnesses existed. Veal's offer provides no assistance in this regard.

The court fully appreciates the concerns of Veal's counsel regarding the physical safety of his alibi witnesses. But there were numerous means of preserving their safety while at the same time providing the court with more detailed information. The most obvious would have been delivery of the signed statements to the court for *in camera* inspection. Veal argues that such procedures were never suggested by the trial court nor by the State. But it was not upon the trial court or the State to do so. The burden was upon Veal to make an adequate offer, and it is our conclusion that he failed to do so in this case.[1]

---

1. Veal argues that the offer of proof was valid based upon our recent decision in *Parisie v. Greer,* 671 F.2d 1011 (7th Cir. 1982). That decision has been vacated and was argued at an *en banc* hearing on October 19, 1982 (No. 80–1940). Thus, reliance is improper at this stage. Nonetheless, that case would not affect our conclusion. In that case, the defendant was charged with murder. At trial, he attempted to introduce evidence showing that the victim was a homosexual. This evidence was intended to explain why the defendant was found in the victim's car with several personal

effects of the victim. The state trial court refused to admit this evidence and the defendant proceeded to make an offer of proof which:

> consisted of defense counsel's statement to the trial court that a witness would testify to having participated in three homosexual acts with the decedent and that the decedent was reputed in the community to be a homosexual. Also, defense counsel referred the trial court to an affidavit executed by another defense counsel and previously filed with the court and referred to at the hearings on the motion *in limine* and voir dire restrictions.

■ The second argument made by Veal is that Illinois law did not require that an offer of proof be made. We find this argument very difficult to accept. First, if Veal's counsel truly believed that an offer was unnecessary, it is curious that he would nevertheless attempt to make one. Second, the cases cited by Veal do not support his contention that offers of proof were unnecessary in 1971. In *People v. Bibbs,* 115 Ill.App.2d 200, 253 N.E.2d 179, 181 (1969), *cert. denied sub nom., Bibbs v. Illinois,* 398 U.S. 967, 90 S.Ct. 2184, 26 L.Ed.2d 552 (1970), the court stated that "an offer of proof is not required where the question propounded shows the purpose and materiality of the evidence sought." In *City of Joliet v. Jackson,* 4 Ill.App.3d 826, 281 N.E.2d 442, 444 (1972), the court stated that where an offer of proof would have been to no avail, "no formal offer is necessary to preserve the point on review." In *People v. Moore,* 27 Ill.App.3d 337, 326 N.E.2d 420, 425 (1975), the court held that a failure to make an offer of proof can be excused "where there is another satisfactory indication to the trial court, the opposing counsel, and the reviewing court of the substance of the excluded evidence." In *People v. Boles,* 52 Ill.App.3d 707, 10 Ill.Dec. 404, 367 N.E.2d 1013 (1977), *People v. Jackson,* 48 Ill.App.3d 769, 6 Ill.Dec. 710, 363 N.E.2d 392 (1977) and *People v. Johnson,* 47 Ill.App.3d 362, 6 Ill.Dec. 66, 362 N.E.2d 701 (1977), the appellate court reaffirmed several exceptions to the normal requirement of an offer of proof. Rather than establishing that an offer of proof was unnecessary, these cases make all too plain that unless one of the specially carved out exceptions applies, a party is required to make an adequate offer of proof if he later seeks review of the

exclusion of the evidence. The cases cited by the State, *People v. Bridgeforth,* 51 Ill.2d 52, 281 N.E.2d 617 (1972) and *People v. Burris,* 49 Ill.2d 98, 273 N.E.2d 605 (1971), as well as the Illinois Appellate Court in this same case, 16 Ill.Dec. at 217, 374 N.E.2d at 992, also refute Veal's contention that an offer of proof was unnecessary under Illinois law.

Veal's final argument and the one most crucial to the outcome of this case is that *Sykes* is inapplicable to cases where the defendant has failed to make an offer of proof and is instead limited to cases where the defendant has failed to make a contemporaneous objection. We reject such a narrow construction and rely upon the Supreme Court's recent decision in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In that case, the defendant failed to object to a jury instruction of the trial court allocating the burden of proof with respect to self-defense. Shortly before the Ohio Supreme Court overruled his motion for leave to appeal, that same court ruled invalid an instruction identical to that given in Isaac's trial. The issue before the Supreme Court was whether Isaac was precluded in a federal habeas proceeding from challenging the legality of the instruction given at his trial.

In holding that Isaac was precluded, the Court stated in unequivocal and unambiguous language that "when a *procedural default* bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice." at 129, 102 S.Ct. at 1572 (emphasis supplied). *See also United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nowhere in its

This affidavit stated that two witnesses had seen the decedent in known male homosexual locations making homosexual manifestations.

*Id.* at 1014. Disagreeing with the conclusion of the Illinois Appellate Court, this court found the offer of proof adequate.

The proffered testimony of the three witnesses involved a great deal more than mere reputation evidence. The testimony involved actual homosexual acts and manifestations on the part of the decedent.

*Id.* In this case, the offer contains no specifics whatsoever. The claim that Veal "was at a place other than the scene of the crime" stands naked without any factual specificity. Saying that one has evidence showing the defendant was elsewhere is merely repeating that the defendant has an alibi. Nothing is gained by such an offer. In *Parisie,* the claim that the victim was a homosexual did not stand alone but was well supported by specifics. Thus, the two cases are not at all alike.

opinion does the Court limit its holding to contemporaneous objections. This court recently held in *Norris v. United States,* 687 F.2d 899 at 903 (7th Cir.1982), that the cause and prejudice standard of *Sykes* was applicable to a procedural failure to appeal. In *Norris* the court found the petitioner's failure to pursue a ground on direct appeal would bar the grounds in a habeas motion unless good cause for not appealing was shown, at 903. Any procedural default is covered by the "cause and prejudice" standard and it is fundamental that the failure to make an adequate offer of proof constitutes a procedural default. *See Nanda v. Ford Motor Co.,* 509 F.2d 213, 223 (7th Cir.1974).

Our review of the record indicates that the State never presented its *Sykes* argument to Judge Aspen. Nonetheless, inasmuch as *Isaac* was decided subsequent to the decision below and the principles of *Isaac* have a direct bearing on the outcome of this habeas action, we believe that addressing this argument was necessary and proper. *See United States ex rel. Cosey v. Wolff,* 682 F.2d 691 at 693–694 (7th Cir. 1982). It is also important that we distinguish this case from *United States ex rel. Ross v. Franzen,* 668 F.2d 933 (7th Cir.1982). In that case, the Illinois Appellate Court noted the failure of the defendant to object to the omission of a jury instruction but nonetheless proceeded to decide the issue on the merits. This court held that it could address the merits of the dispute because of the Illinois court's decision on the merits notwithstanding lack of preservation. *Id.* at 936–37. In this case, the Illinois Appellate Court relied on two grounds, one procedural and one substantive. Unlike *Ross,* the Illinois Appellate Court here did not disregard or waive the lack of preservation issue. That fact is one of the express reasons behind its holding. Thus, this case was decided in part on an independent state procedural ground to which *Sykes* and *Isaac* apply.

■ Having found *Sykes* and *Isaac* controlling, we now conclude that the correct action to be taken is to remand with directions that a hearing be held to determine whether Veal satisfies the "cause and prejudice" standard.[2] We considered assuming this task ourselves but quickly decided against it for two reasons. First, Judge Aspen has most ably analyzed the issues in this case and should be given an opportunity to analyze this one. Second, unlike the record in *Parisie v. Greer,* 671 F.2d 1011 (7th Cir.1982), there are factual questions which require fuller ventilation. With respect to the cause element, Veal has maintained throughout the proceedings that the safety of the alleged witnesses was the reason for nondisclosure. The reasonableness of that concern and the availability of alternate measures of achieving witness safety are not readily discernible from the record. At oral argument, Veal asserted that the case was marred by police harassment of witnesses. The record does not fully substantiate this charge but that is not to say it is not true. With respect to the prejudice element, there can be no serious dispute that exclusion of these witnesses, if they in fact existed, resulted in substantial prejudice to Veal. *See Allison v. Gray,* 603 F.2d 633 (7th Cir.1979). The crux of this issue is whether these witnesses existed. No case has been cited by the parties nor discovered by the court which faces this issue. In all the alibi-notice cases, the existence of the witnesses is established or at least not challenged as a fabrication. *See United States ex rel. Hairston v. Warden,* 597 F.2d 604, 608–09 (7th Cir.), *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). In the hearing to take place below, to satisfy the prejudice requirement under *Sykes* and *Isaac,* Veal will need to show by a preponderance of the evidence that these witnesses did exist and were available at the time of his trial.

It is extremely unfortunate that twelve years after trial, we are faced with the task of ascertaining a fact which could have been easily determined at trial. We fully

---

**2.** Judge Coffey in dissent argues upon the basis of a plan or design by Veal's trial counsel, which plan or design he describes as "obvious" but which finds no basis in the record.

understand Veal's counsel's concerns about the physical safety of his alleged witnesses but cannot understand his exaggerated response in failing to even consider reasonable alternative actions which would have protected them while at the same time supplying the court with important and necessary information. We intimate no opinion but it is quite obvious that the Illinois Appellate Court believed no witnesses existed and that counsel's vigorous efforts against disclosure are explained by this fact. This situation cannot be left in its present state and because of its grave importance, we have no choice but to allow the district court a full opportunity to resolve it.

The judgment of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion. Circuit Rule 18 shall not apply.

COFFEY, Circuit Judge, dissenting in part.

I agree with the majority that the judgment should be reversed. However, I do not agree that a hearing should be held to determine whether the petitioner should be allowed at this time to make a show of "cause and prejudice" in order to obtain a habeas corpus relief judgment for his failure to make an adequate offer of proof during the course of this trial in the Illinois state court some eleven long years ago.

The majority correctly holds that no adequate offer of proof was made in the state trial court at that time. I would go further, and hold that the petitioner's able and experienced trial counsel did not even attempt to make a proper offer of proof. The reason is obvious. Counsel was attempting to set up a constitutional challenge to the Illinois Notice of Alibi Statute. If he had made a proper offer of proof, it would necessarily include the names of the alleged alibi witnesses and what proof they would have stated under oath. Under the ruling of the experienced Illinois trial judge, their testimony would then be admissible and the constitutional objection would fall by the wayside. Faced with this dilemma, the defense counsel made a tactical choice to retain the constitutional objection and sacrifice his client's purported alibi. He rolled the dice, and/or flipped the coin, and lost, so as to say to the judge and citizens of Illinois, "heads I win, tails you lose."

By intentionally failing to make an offer of proof, the petitioner Veal made a tactical choice to by-pass the state court's orderly procedure for raising as error the possible exclusion of alibi witnesses. Even under the more lenient standard which preceded the current "cause and prejudice" test, *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), federal habeas corpus relief was unavailable where the petitioner, "whether for strategic, tactical, or any other reasons" had "deliberately chosen to by-pass orderly state procedures ...." *Murch v. Mottram,* 409 U.S. 41, 44, 47, 93 S.Ct. 71, 72, 74, 34 L.Ed.2d 194 (1972). Thus, remanding for a "cause and prejudice" hearing is a waste of the district court's time because a party, such as Veal, who has chosen to deliberately by-pass the state court's orderly procedure obviously cannot show "good cause for his procedural default ...." *Norris v. United States,* 687 F.2d 899 at 900 (7th Cir.1982). The majority's remand for an evidentiary hearing in this case fails to recognize that the "cause and prejudice" test is meant to serve as a "gatekeeping procedure designed to prevent the courts from being flooded by unworthy postconviction motions ...." *Id.*

The Illinois Appellate Court ruled that the record failed to support a claim of prejudice. Thereafter, both the Supreme Courts of the United States and Illinois denied review. Now the majority of this court's panel gives counsel a new set of dice and a new table on which to roll them, changes the rules some eleven years after the trial and finds a way to disregard and change the accepted way for making an offer of proof under the guise of a questionable constitutional claim. The majority's decision to remand for an evidentiary hearing frustrates the policy expressed in *Engle v. Isaac,* 452 U.S. 107, 127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982), in which the Supreme Court warned against use of

the habeas corpus writ to undercut a state's ability to enforce its well established procedural rules:

"Liberal allowance of the writ, moreover, degrades the prominence of the trial itself. A criminal trial concentrates society's resources at one 'time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence.' Our Constitution and laws surround the trial with a multitude of protections for the accused. Rather than enhancing these safeguards, ready availability of habeas corpus may diminish their sanctity by suggesting to the trial participants that there may be no need to adhere to those safeguards during the trial itself." (citation omitted).

Similarly, the United States Supreme Court cautioned that constant federal intrusions in state criminal proceedings undermine the morale of state judges:

"there is 'nothing more subversive of the judge's sense of responsibility, of the inner subjective conscientiousness which is so essential a part of the difficult and subtle art of judging well, than an indiscriminate acceptance of the notion that all the shots will always be called by someone else.'"

*Id.* at 128 n. 33, 102 S.Ct. at 1572 n. 33, quoting Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 451 (1963).

The majority says the petitioner will be required to prove to the district judge that his alibi witnesses did in fact exist and were available at the time of his trial some eleven long years ago. This is exactly what the petitioner's counsel was required to show to the Illinois trial judge at the time of trial, but the petitioner's counsel instead displayed his arrogance toward the accepted rules of evidence by refusing to make the required offer of proof. The proper time and place to have made the showing which the majority now requires was eleven years ago in the Illinois trial court and the federal courts should not put themselves in the position of second-guessing the state courts more than a decade after the fact. In an eloquent and forceful speech delivered to a recent meeting of the American Bar Association, Chief Justice Burger noted that:

"We must not be misled by cliches and slogans that if we but abolish poverty, crime will also disappear. There is more to it than that. A far greater factor is the deterrent effect of swift and certain consequences: swift arrest, prompt trial, certain penalty, and—at some point—finality of judgment."

Address by Chief Justice Burger, ABA Mid-Year Meeting (February 8, 1981). Chief Justice Burger cautioned that such an absence of finality in criminal proceedings makes a mockery of our system of justice, and stressed that the courts must,

"re-examine our judicial process and philosophy with respect to finality of judgments. The search for 'perfect' justice has led us on a course found nowhere else in the world.... [T]he judicial process becomes a mockery of justice if it is forever open to appeals and retrials for errors in the arrest, the search, or the trial. Traditional appellate review is the cure for errors, but we have forgotten that simple truth."

It is important to emphasize that the petitioner Veal has already raised the same issue on appeal as is presented in this habeas corpus action, *i.e.*, the exclusion of purported alibi witnesses. The Illinois Appellate Court rejected Veal's argument and affirmed the conviction, and both the Illinois and United States Supreme Courts declined to review the conviction. Thus, Veal has already availed himself of "traditional appellate review" on three separate occasions, while others in our society must wait two or three years for just one appellate review. Now Veal has decided that he has nothing to lose by trying his luck again in the federal court system, hoping that an alleged technical error which purportedly occurred at trial eleven years ago will permit him to escape punishment for his crimes.

"Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding ef-

fect beyond the next in a series of endless post-conviction collateral attacks."

*Norris v. United States,* 687 F.2d 899 at 902–903 (7th Cir.1982).

In his speech to the American Bar Association, Chief Justice Burger further warned that:

"Our search for true justice must not be twisted into an endless quest for technical errors unrelated to guilt or innocence.

The system has gone so far that Judge Henry Friendly, in proposing to curb abuses of collateral attack, entitled his article, 'Is Innocence Irrelevant?'

And Justice Jackson once reminded us that the Constitution should not be read as a 'suicide pact.'"

\*     \*     \*     \*     \*     \*

"[O]ur criminal process often goes on two, three, four or more years before the accused runs out all the options. Even after sentence and confinement, the warfare continues with endless streams of petitions for writs, suits against parole boards, wardens and judges.

So we see a paradox—even while we struggle toward correction, education and rehabilitation of the offender, our system encourages prisoners to continue warfare with society. The result is that whatever may have been the defendant's hostility toward the police, the witnesses, the prosecutors, the judge and jurors—and the public defender who failed to win his case—those hostilities are kept alive. How much chance do you think there is of changing or rehabilitating a person who is encouraged to keep up years of constant warfare with society?"

Similarly, the opinions of the United States Supreme Court also recognize that an absence of finality in criminal proceedings frustrates the very goals of our criminal justice system, deterrence and rehabilitation.

"No effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look forward to rehabilitation and to becoming a constructive citizen."

*Schneckloth v. Bustamonte,* 412 U.S. 218, 262, 93 S.Ct. 2041, 2065, 36 L.Ed.2d 854 (1973) (Powell, J., concurring) (footnote omitted).

I dissent from the remand for an evidentiary hearing to determine the availability of alleged witnesses to the petitioner's alibi because: (1) by remanding for an evidentiary hearing, the majority permits the defendant to avoid the consequences of his failure to make an offer of proof at trial, thus eviscerating the important purpose an offer of proof serves in criminal trials and creating a drastic new rule of procedure unfounded in law or common sense; and (2) I believe it is now time to recognize the finality of Veal's murder conviction and to punish him for his crimes.